IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02214-MSK-CBS

CYNTHIA M. MATTSON,
        Plaintiff,
v.

JANET NAPOLITANO,
U.S. DEPARTMENT OF HOMELAND SECURITY, and
TRANSPORTATION SECURITY ADMINISTRATION,
        Defendants.
_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

        This civil action comes before the court on "Defendants' Motion to Dismiss Plaintiff's

Amended Complaint [Doc. 7]" (filed January 17, 2012) (Doc. # 25).  Pursuant to the Order of

Reference dated November 29, 2011 (Doc. # 13) and the memorandum dated June 25, 2012

(Doc. # 39), this matter was referred to the Magistrate Judge.   The court has reviewed the

Motion, "Plaintiff's Response to Defendant's Motion to Dismiss" (filed May 7, 2012) (Doc. #

36), Defendants' Reply (filed May 23, 2012) (Doc. # 37), the pleadings, the entire case file

and the applicable law and is sufficiently advised in the premises.


I.        Statement of the Case

        Proceeding *pro se*, Ms. Mattson filed her initial "Title VII Complaint" on August 23,

2011.   At the court's direction, she filed "Plaintiff's Amended Complaint" (hereinafter "AC") on

November 7, 2011.  (*See* "Order Directing Plaintiff to Cure Deficiency" (Doc. # 3); Minute

Order (Doc. # 5); AC (Doc. # 7) at 1-2, 5-6 of 9).  Ms. Mattson's claims are difficult to discern

from her pleading.  Ms. Mattson alleges an "incident on March 1, 2008 at her workplace,

1

Denver International Airport, in Aurora, Colorado" that occurred "in her capacity of performing screening duties as an employee of the Department of Homeland Security Transportation Security Administration." (*See* AC (Doc. # 7) at 1, 7 of 9).  Ms. Mattson's last day on the job with TSA was July 6, 2010, when her "light duty" status expired. (*See* Declaration of Ruth Antosik (Exhibit 3 to Motion (Doc. # 25-3) at ¶¶ 3-4).[1]  She has not performed any work for the Transportation Security Administration ("TSA") since July 6, 2010.  (*See id.* at ¶ 4).  Her employment was formally terminated on February 18, 2011.  (*See id.* at ¶ 5).

Liberally construed, Ms. Mattson's pleading seems to allege that TSA discriminated against her based on her gender, age, and disability, and retaliated against her for filing complaints with the Equal Employment Opportunity Commission ("EEOC").  She alleges that "in the 2007-2009 timeframe," she presented to the EEOC discrimination claims based on "age, sex, disability and retaliation allegations."  (*See* Doc. # 7 at 1; Response (Doc. # 36) at 5 of 68).  Ms. Mattson appears to seek monetary damages.  (*See* AC at 4, 8 of 9).  She alleges jurisdiction under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the "laws on retaliation."  (*See* Doc. # 7 at 5 of 9).  The court construes her retaliation allegation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq.

II.    Standard of Review

Defendants move to dismiss the AC pursuant to Fed. R. Civ. P. 12(b)(1), arguing that the court lacks subject matter jurisdiction over Ms. Mattson's claims.  "Rule 12(b)(1) motions

---

[1]    The court may consider the information in the attached declarations because the information addresses Defendants' jurisdictional defense of Ms. Mattson's failure to exhaust her administrative remedies. When considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the court is not limited to reviewing the allegations in the complaint. *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995).

generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Widjaja v. Nicholson*, No. 08-cv-00204-MSK-MEH, 2009 WL 321875, at * 3 (D. Colo. Feb. 9, 2009) (citations omitted).  "Where the defendant goes beyond the factual allegations in the Complaint, the Court may not presume the truthfulness of the complaint's factual allegations; rather, the Court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id.* (citation omitted).  "The burden is on the proponent of federal jurisdiction—here, the Plaintiff—to establish that such jurisdiction exists." *Id.* (citation omitted).

Defendants further move for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

> [A] claim must be dismissed if the complaint does not contain enough facts to make the claim plausible on its face.  A claim is plausible on its face if the complaint contains sufficient facts for a court to draw an inference that the defendant is liable for the alleged misconduct.  Although a plaintiff is not required to include detailed factual allegations in a complaint, the complaint must contain more than labels and conclusions or a formulaic recitation of the elements of a cause of action and must raise a right to relief above the speculative level.  In reviewing a complaint under Rule 12(b)(6), a court should accept, as true, all well-pleaded facts and construe all reasonable allegations in the light most favorable to a plaintiff.

*Baldwin v. United States*, No. 11-cv-02033-MSK-KLM, 2012 WL 2215680, at * 1 (D. Colo. June 15, 2012) (internal quotation marks and citations omitted).

III.     Analysis

A.     Prior Litigation

This is Ms. Mattson's third civil action claiming discrimination based on her former employment with TSA.  Ms. Mattson alleges only two events in her employment history with

TSA that have not been previously dismissed in her prior lawsuits: (1) her last day of work as a Transportation Security Officer ("TSO") for TSA was July 6, 2010, when her "light duty" status expired, and (2) her employment with TSA was formally terminated on February 18, 2011.

In *Mattson v. Chertoff*, Ms. Mattson brought claims for gender, age, and disability discrimination, violation of the Family Medical Leave Act ("FMLA"), and breach of employment contract.  No. 07-cv-02432-PAB-BNB, 2009 WL 564289, at * 2 (D. Colo. March 5, 2009).  The case was dismissed for, among other reasons, Ms. Mattson's failure to file her gender, age, and disability discrimination claims within 90 days after she received her Notice of Right to Sue from the Equal Employment Opportunity Commission ("EEOC").  *See id.*

In *Mattson v. Napolitano*, Ms. Mattson brought claims for gender and disability discrimination, hostile work environment, and retaliation for complaining about adverse treatment.  No. 09-cv-2024-PAB-BNB, 2010 WL 5014630 (D. Colo. Dec. 2, 2010).  (*See also* Recommendation of United States Magistrate Judge (Exhibit 1 to Motion (Doc. # 25-1) at 3 (Ms. Mattson has already brought claims that she "suffered gender and disability di[s]crimination; the defendant discriminated against her by failing to hire and promote her and by creating a hostile work environment; and the plaintiff has been retaliated against for filing a previous complaint of discrimination."))  The case was dismissed for failure to exhaust administrative remedies and failure to state a claim upon which relief could be granted.  (*See* Doc. # 25-1);  Order (Exhibit 2 to Motion (Doc. # 25-2)).  Ms. Mattson's appeal of the District Court's Order dismissing the case was dismissed as untimely filed.  *See* No. 10-1519 (10th Cir. Jan. 24, 2011).  *See also Mattson v. Cherthoff*, Appeal No. 0120052563, Agency No. HS 04-1237, 2007 WL 2026963, at *1 (E.E.O.C. July 3, 2007) (affirming agency's final decision dismissing Ms. Mattson's claims for hostile work environment employment discrimination and

harassment based on a disability); *Mattson v. Cherthoff*, Appeal No. 0120071715, Agency

No. HS05TSA002236, 2007 WL 2350786, at *1 (E.E.O.C. Aug 6, 2007) (affirming agency's

final decision dismissing Ms. Mattson's claims for hostile work environment employment

discrimination, discrimination on the basis of age, discrimination based on a disability, and

reprisal for prior EEO activity).  Ms. Mattson presents no legal basis that allows her to

relitigate these claims in this case.

B.      Subject Matter Jurisdiction

1.      Claims Based on Alleged Disability

        Defendants argue that the court lacks subject matter jurisdiction over Ms. Mattson's

claims for discrimination based on a disability.  Ms. Mattson alleges jurisdiction under the

ADA.  (*See* Doc. # 7 at 5 fo 9).  However, she "has no remedy for employment discrimination

under the Americans With Disabilities Act because she [was] a federal employee." *Mannie v.*

*Potter*, 394 F.3d 977, 982 (7th Cir. 2005) (citation omitted).  The Rehabilitation Act, 29 U.S.C.

§ 701 *et seq.*, applies to federal employees.  The Aviation and Transportation Security Act of

2001 ("ATSA") Pub. L. No. 107-71, Nov. 19, 2001, 115 Stat. 597 (codified in various sections

of 49 U.S.C.), exempts the TSA from compliance with the Rehabilitation Act.  *See* 49 U.S.C.

§ 44935, Pub.L. 107-71, Title I, § 111(d), Nov. 19, 2001, 115 Stat. 620 (codified as a note)

("Notwithstanding any other provision of law, the Under Secretary of Transportation for

Security may employ, appoint, discipline, terminate, and fix the compensation, terms, and

conditions of employment of Federal service for . . .  individuals as the Under Secretary

determines to be necessary to carry out the screening functions of the Under Secretary . . .

."); *Field v. Napolitano*, 663 F.3d 505, 510 (1st Cir. 2011) ("Every circuit to address the issue

has agreed that the language of the ATSA plainly precludes security screeners from bringing

suit under certain of the federal employment statutes incorporated under Title 5 of the United States Code, including the Rehabilitation Act.") (citations omitted);  *Joren v. Napolitano*, 633 F.3d 1144, 1146 (7th Cir. 2011) (citing 49 U.S.C. § 44935), *reh'g en banc denied* (7th Cir. Mar. 9, 2011), *cert. denied*, 132 S. Ct. 290 (Oct. 3, 2011);  *Castro v. Secretary of Homeland Security*, 472 F.3d 1334, 1337 (11th Cir. 2006) ("[T]he 'notwithstanding' language of section 44935(e) and the note to the statute indicate that TSA shall implement hiring standards and conditions of employment (including physical standards) for screening personnel, whether or not those standards and conditions of employment are consistent with the Rehabilitation Act.");  *Conyers v. Merit Sys. Prot. Bd.*, 388 F.3d 1380, 1383 (Fed. Cir. 2004) ("Section 111(d) of the ATSA exempts TSA from laws that otherwise would apply to screener positions.").  *Accord, e.g., American Fed'n of Gov't Emps. v. Hawley*, 481 F. Supp. 2d 72, 83 (D.D.C. 2006) ("The 'plain meaning' of ATSA Sections 111(d) and 101 shows that Congress intended to invest the TSA Under Secretary with authority to exempt security screeners from the employee protections of otherwise applicable federal personnel laws.");  *Tucker v. Ridge*, 322 F. Supp. 2d 738, 742 (E.D. Tex. 2004) (dismissing plaintiff's claim of discrimination under the Rehabilitation Act as superceded by Section 111(d))*;  Teamer v. Napolitano*, No. H-11-1808, 2012 WL 1551309, at *9 (S.D. Tex. May 1, 2012) ("Thus ATSA preempts application of sections 501 and 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 791, 794, for airport security screeners.");  *Simmons v. Napolitano*, No. 3:11-0801, 2012 WL 1231969, at *4 (S.D.W.Va. Apr. 12, 2012) ("ATSA clearly bars security screeners from bringing suits under the Rehabilitation Act").

As Ms. Mattson was advised in her prior case, she cannot bring a cause of action under the ADA or the Rehabilitation Act.  *See Mattson v. Napolitano*, No. 09-cv-02024-PAB-BNB, Doc. # 25-2 at 2 ("[t]he TSA is not bound by the Rehabilitation Act when making

employment decisions regarding security screeners.").  The court lacks subject matter jurisdiction over any claim of discrimination, whether for disparate treatment, retaliation or hostile work environment, based on Ms. Mattson's alleged disability.

2.      Administrative Requirements

Ms. Mattson's "light duty" status expired on July 6, 2010 and she performed no work for TSA after that date.  (*See* Doc. # 25-3 at ¶¶ 3-4).  Her employment was formally terminated on February 18, 2011. (*See* Doc. # 25-3 at ¶ 5).  Defendants argue that the court lacks subject matter jurisdiction over Ms. Mattson's claims regarding her February 18, 2011 termination because she failed to exhaust her administrative remedies.  Exhaustion of available administrative remedies is a jurisdictional prerequisite to a Title VII suit.  *McDonald-Cuba v. Santa Fe Protective Services, Inc.*, 644 F.3d 1096, 1101 (10th Cir. 2001) (citation omitted).  Federal courts "lack jurisdiction to review Title VII claims that are not part of a timely-filed EEOC charge."  *Annett v. Univ. of Ks.*, 371 F.3d 1233, 1238 (10th Cir. 2004).  The Age Discrimination in Employment Act ("ADEA") and Title VII "have virtually identical requirements with respect to the filing of EEOC charges."  *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 191, 1194 (10th Cir. 2004).  Thus, a plaintiff's exhaustion of his or her administrative remedies is also a jurisdictional prerequisite to suit under the ADEA.  *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005).

Federal employees may pursue either of two separate avenues to administratively exhaust a claim of employment discrimination.  "[A] federal employee who asserts claims of unlawful discrimination in conjunction with a challenge to an adverse employment action" may "either file an EEO complaint with the employing agency or appeal directly to the MSPB."  *Coffman v. Glickman*, 328 F.3d 619, 622 (10th Cir. 2003) (citations omitted).  "Whichever

7

action is taken first is considered an election to proceed in that forum." *Id.* "The

administrative exhaustion requirement applies regardless of which administrative path the

federal employee elects." *Id.* at 624.

> If the employee chooses to go the EEO route, he or she simply files a complaint
> with the EEO department of the employing agency.  The EEO officer then
> conducts an investigation and comes to a conclusion. The employee can then
> file an appeal to the EEOC and thereafter proceed to federal court, without the
> obligation to present evidence to an ALJ in order to exhaust his or her
> administrative remedies.

*Id.* (citations omitted).

"[O]n March 24, 2011, Ms. Mattson contacted an EEO Counselor to initiate a charge

asserting she was wrongfully terminated on February 18, 2011." (*See* Doc. # 25-4 at ¶ 5).

TSA's Office of Civil Rights and Liberties "sent Ms. Mattson a package in order to initiate the

informal counseling process, but Ms. Mattson never returned that material.  As a result, there

has been no action on Ms. Mattson's request for counseling related to her termination, and

that process remains incomplete." (*See* Doc. # 25-4 at ¶ 6).  With her Response, Ms.

Mattson included numerous documents, a few of which reference the February 18, 2011

termination date and two of which contain her contention "that both the July 6, 2010 medical

leave incident and the February 18, 2011 wrongful termination incident were going to be

combined." (*See* Doc. # 36 at 24, 27-28, 38, 48, 54, 57, 62, of 68).  However, Ms. Mattson's

Response and the documents she submits with her Response do not demonstrate timely

exhaustion of any claim regarding her termination after February 18, 2011.  Because she

abandoned the administrative process without participating in informal counseling with an

EEO Counselor, Ms. Mattson did not exhaust any claim related to the termination of her

employment on February 18, 2011.  Ms. Mattson failed to exhaust any claims related to the

termination of her employment on February 18, 2011.  The court lacks subject matter

jurisdiction over any claims, whether based on gender, age, disparate treatment, retaliation or hostile work environment, related to events Ms. Mattson's February 18, 2011 termination.[2]

C.      Failure to State a Claim

1.      Limitations Period

Defendants argue that any claim related to Ms. Mattson's employment status on July 6, 2010 was untimely filed with the EEOC.  Federal employees who believe they have been discriminated against on the basis of age must consult an EEO counselor prior to filing a complaint with the employee's agency. 29 C.F.R. § 1614.105(a).  The employee "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of a personnel action, within 45 days of the effective date of the action." *Id.* § 1614.105(a)(1).  "Because the EEO deadline serves as a statute of limitation, a plaintiff who does not contact an EEO counselor within the time period prescribed by these regulations is barred from bringing suit on the matter." *Albert v. Henderson*, 216 F. Supp. 2d 1171, 1174 (D. Colo. 2002).  EEOC Regulation 29 C.F.R §1614.107(a)(2) states, in pertinent part, that an agency shall dismiss a complaint which fails to comply with the applicable time limits contained in 29 C.F.R § 1614.105.

Compliance with this forty-five day administrative provision is a prerequisite to filing suit in federal court. *See Dimsdale v. Peters*, 217 F. App'x 743, 746 (10th Cir. 2007) ("The regulation places no limits on when an aggrieved party may contact a counselor if all he seeks is an informal resolution of his complaint; however, if an aggrieved party wishes to

_____

[2]      Because the court has concluded that any claims based on Ms. Mattson's alleged disability must be dismissed for lack of subject matter jurisdiction, the court need not address Defendants' argument that Ms. Mattson did not exhaust all administrative remedies as to her claims based on a disability.

pursue a formal complaint or a lawsuit, he must contact the Counselor within forty-five days.").[3]  Compliance, however, is not necessarily a jurisdictional prerequisite. The complete failure to initiate contact with an EEO counselor is a jurisdictional bar, but untimely contact is not.  *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1325 (10th Cir. 2002) (distinguishing "between a failure to timely file an administrative charge, which is not jurisdictional, and a failure to file an administrative charge at all, which is a jurisdictional bar.") (citing *Jones v. Runyon*, 91 F.3d 1398, 1399 n. 1 (10th Cir. 1996);  *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393–98 (1982) (rejecting the argument that courts lacked subject matter jurisdiction to award relief in cases where exhaustion was untimely; "[w]e hold that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.")).

Substantively, this means that the forty-five day time limit may be tolled in appropriate circumstances.  *Sizova*, 282 F.3d at 1325.  Here, there is no dispute that Ms. Mattson initiated contact with an EEO counselor on August 23, 2010.  She complained that she was discriminated against based on a disability (a neck injury) and reprisal for prior EEO activity. The Department of Homeland Security ("DHS") dismissed the EEO complaint on December 2010 for failure "to comply with the applicable time requirement for EEO Counselor contact," that is, failure to "initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective

---

[3]      When the complaint is based on alleged violations of the ADEA an employee has the option of bypassing this administrative procedure and providing the head of the agency with thirty days notice of intent to file a civil action in a United States district court and proceeding directly to court.  *Mayberry v. E.P.A.*, No. 09-3053, 366 F. App'x 907, 909 (10th Cir. Feb. 23, 2010) (citing 29 C.F.R. § 1614.201(a)).  Ms. Mattson does not allege that she filed such a notice.

date of the action." 29 C.F.R. §§ 1614.105, 1614.107(a)(2).  (*See* Final Decision dismissing complaint (Exhibit 5 to Motion) (Doc. # 25-5) (concluding that Ms. Mattson failed to make contact with an EEO Counselor within 45 days of July 6, 2010)).[4]  The EEOC affirmed the dismissal of Ms. Mattson's August 23, 2010 complaint for failure to comply with the 45-day time requirement for EEO Counselor contact.  *See Mattson v. Napolitano*, Appeal No. 0120111925, Agency No. HS-TSA-18160-2010, 2012 WL 750343 (E.E.O.C. Feb. 22, 2012).

Ms. Mattson argues that she made timely contact with an EEO Counselor because she sent an email on August 20, 2010 (*see* Doc. #  36 at 12 ("An email was sent to the EEO addressing the issue as a change in my working conditions (August 20).") and followed up with a telephone call on Sunday, August 22, 2010.  (*See id.* ("I called on August 22 (Saturday) [sic] and left a message.").  Ms. Mattson's argument that she sent an email on Friday, August 20, and made a telephone call on Sunday, August 22 is the same argument that she presented to the EEOC and that the EEOC rejected.  Ms. Mattson submitted to the EEOC "a copy of an August 20, 2010 email she claimed she sent to the Agency's Office of Civil Rights and Liberties asking for confirmation that they received her complaint . . . ."  *See Mattson v. Napolitano*, 2012 WL 750343, at *1.  The EEOC rejected her argument.

> A review of the record reveals that the Office of Civil Rights and Liberties recorded the initial contact date as August 23, 2010, which is beyond the 45-day limitation period. Complainant maintains that she timely contacted the Office on August 20, 2010. In support, Complainant submitted an email that she claims she sent to the Office of Civil Rights and Liberties inquiring into whether it had received her complaint regarding her separation from duty. The Commission notes that the EEO complaint processing regulations at 29 C.F.R. Part 1614 do not expressly address or define service by electronic mail.

---

[4]      The court may consider this information in reviewing Defendants' Motion to Dismiss because Ms. Mattson attached it to her AC.  (See Doc. # 7 at 9 of 9).  *See Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) ("in deciding a motion to dismiss pursuant to Rule 12(b)(6), a court may look both to the complaint itself and to any documents attached as exhibits to the complaint").

Nonetheless, the record indicates that the Office informed Complainant that it had no record of receiving any documents from Complainant on this date. The Commission notes that Complainant produced no evidence of any of the claimed documents she sent to the Office of Civil Rights and Liberties on August 20, 2010. In addition, the Office of Civil Rights and Liberties noted in the Initial Contact Sheet that Complainant claimed that she emailed her complaint and that "her cell phone recorded 08/22/10 at approx 10:30 PM Colorado time." The Office indicated that it did not receive any messages from Complainant on that date.

Additionally, the EEO Counselor's Report indicated that August 23, 2010, was the date of Complainant's initial contact. Most notably, in her formal EEO complaint, Complainant listed August 23, 2010, as the date that she contacted an EEO counselor.

See 2012 WL 750343 at *1-2 (emphasis added);  Doc. # 25-4 at ¶ 4 (records maintained by the Office of Civil Rights and Liberties show that, "[o]n August 23, 2010, Ms. Mattson contacted an EEO Counselor to initiate a complaint concerning events that occurred on July 6, 2010.").  Ms. Mattson alleges no basis that would allow this court to reach a different result.

"[E]xceptional circumstances may justify equitable tolling of a statute of limitations," such as Defendant's misconduct or where a plaintiff is adjudged incompetent or was institutionalized.  *See Alexander v. Oklahoma*, 391 F. 3d 1155, 1161 (10th Cir. 2004) ("Generally, courts have tolled the statute of limitation when plaintiffs' failure to file their claims within the statutory period is excused by the defendant's misconduct");  *Biester v. Midwest Health Servs., Inc.*, 77 F.3d 1264, 1268 (10th Cir. 1996) (no tolling where plaintiff was able to write to EEOC and communicate with attorney).  *See also Castaldo v. Denver Pub. Schools*, 276 F. App'x 839, 842 (10th Cir. 2008) (declining to apply tolling where plaintiff who claimed to have a shoulder injury "had not alleged that he had been adjudicated incompetent or institutionalized, nor had he shown that he was incapable of pursuing his claim despite his incapacity, conditions that we suggested [in Biester] might permit equitable tolling").  Ms. Mattson alleges no facts to support tolling the forty-five day limitation period. The allegations here do not plausibly suggest the existence of the "exceptional

circumstances" that would toll the statute of limitations.  Ms. Mattson does not allege

misconduct or that, although she was able to contact an EEO Counselor on August 23, 2010,

she was unable to do so three days earlier.  *See* Doc. # 25-5 at 1 (finding that Ms. Mattson

"did not set forth any justification – either legal or equitable – for tolling the time limitation for

this claim").

      As Ms. Mattson cannot plausibly allege that her initial contact with an EEO counselor

was timely, any claim regarding the terms and conditions in her employment on July 6, 2010,

whether based on gender, age, disability, or retaliation, is barred for failure to comply with the

forty-five day administrative requirement and properly dismissed for failure to state a claim

upon which relief can be granted.

## 2.    Gender and Age Discrimination

      Even if Ms. Mattson's claims did not fail for lack of subject matter jurisdiction and were

not barred for failure to exhaust administrative remedies and as untimely, Defendants argue

that she has not stated any plausible claim for discrimination based on gender or age.

      Title VII makes it unlawful "to discharge any individual, or otherwise to discriminate

against any individual with respect to his compensation, terms, conditions, or privileges of

employment, because of such individual's race, color, religion, sex, or national origin." 42

U.S.C. § 2000e–2(a)(1).  "A plaintiff proves a violation of Title VII either by direct evidence of

discrimination or by following the burden-shifting framework of *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Khalik v. United Air Lines*, 671

F.3d 1188, 1191 (10th Cir. 2012).  Ms. Mattson establishes a prima facie case of

discrimination "by showing (1) she belongs to a protected class; (2) she suffered an adverse

employment action; and (3) the challenged action took place under circumstances giving rise

to an inference of discrimination." *Eyekhobhelo v. City of Colorado Springs*, No. 11-cv-00523-MSK-MEH, 2011 WL 4972655, at * 3 (D. Colo. Oct. 19, 2011) (citation omitted).

The ADEA makes it "unlawful for an employer . . . to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  To establish a prima facie case of age discrimination in violation of the ADEA, a plaintiff must show that she was: (1) within the protected class of individuals 40–years old or older; (2) performing satisfactory work; (3) terminated from employment; and (4) replaced by a younger person, although not necessarily one less than 40 years of age.  *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1146 (10th Cir. 2008) (citation omitted).

A plaintiff is not required to plead specific facts that establish all elements of a prima facie case in order to survive a motion to dismiss.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (202) (holding that "a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a prima facie case of discrimination under the framework set forth in *McDonnell Douglas Corp. v. Green*"), *abrogated in part on other grounds by Twombly*, 550 U.S. 544.  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown -- that the pleader is entitled to relief.").  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and brackets omitted).

The AC contains virtually no factual allegations pertinent to Ms. Mattson's claims.  It sets forth conclusory allegations that largely restate claims that Ms. Mattson has raised in previous lawsuits that have been dismissed.  *See Mattson v. Napolitano*, No. 09-cv-2024-PAB-BNB (Doc. # 25-2) (Ms. Mattson failed to state a claim for which relief may be granted for gender discrimination or retaliation, as she failed to allege "factual content that allows the

14

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Mattson v. Chertoff*, No. 07-cv-02432-PAB-BNB, 2009 WL 564289, at * 2 (Ms. Mattson's claims for gender, age, and disability discrimination dismissed for failure to file claims within 90 days after receipt of Notice of Right to Sue from the EEOC).

In her Response, Ms. Mattson makes several possible references to gender and age : (1) on an unspecified date, an unidentified younger, male TSO was granted a shift change while her request for a shift change was denied; (2) on an unspecified date, she was "forced off" the shift of a supervisory TSO when she reported "his behavior" ("a history of harassing, intimidating, and womanizing the female officers at TSA"); (3) "[a]s a woman of 57 years," Ms. Mattson was "torment[ed]" by a TSA attorney who was "very rude" to her during an administrative hearing in Arizona; (4) "[a]s an older woman, I have witnessed the young woman [sic] get treated more favorably with opportunities around every corner.  I witnessed several younger woman [sic] put themselves in sexually compromised situations where male managers took advantage of them in sexual ways only to advance and obtain better job offers;" and (5) a decision not to prosecute the alleged perpetrator of the March 1, 2008 "incident of assault" may have been based on her gender.  (*See* Doc. # 36 at 5, 9-10, 12-13).[5]

---

[5]     In her Response, Ms. Mattson discusses primarily her alleged disability.  *See* Doc. # 36 at 5 of 68 ("cervical neck trauma" from an "airport accident;" "disabling condition"); 6 ("cortisone treatment to surgically condition my neck;" right shoulder injury; "physical therapy program to rehabilitate my shoulder for a year"); at 7 of 68 (alleged harassment over "damaged shoulder" in the summer of 2009); at 7-8 of 68 (condition had "worsened" as of June 22, 2010); at 8 of 68 (placement on medical leave "awaiting surgery to my right shoulder as a work-related injury;" December 2010 application for medical disability; supervisor "reamed" Plaintiff "for having a shoulder injury" in December 2009); at 9 of 68 (Plaintiff's co-employees "placed their hands on my injured shoulder that remained in a sling for 14 months awaiting surgical treatment"); at 10 of 68 (Plaintiff has "had to repair both hands, right shoulder, right chest, and both right and left neck muscles with the abstraction of a rib;" "I am tired of being targeted for disability discrimination;" "I have been targeted and run ragged over my work injuries, now I'm being fired."); at 11 of 68 ("Medically disabled is my status;" "I have been discriminated for being disabled while performing job-related duties;" Plaintiff "subjected

Ms. Mattson's Response does not cure the entirely conclusory allegations set forth in the AC.

The allegations in the AC and the references in the Response cannot support plausible claims for gender or age discrimination.  The AC does not plead any facts suggesting that the TSA removed Ms. Mattson from light duty status or terminated her employment because of her gender or age.  Ms. Mattson presents no facts that would demonstrate she was similarly situated to the unidentified male co-worker who received a shift change, such that she was the victim of unlawful discrimination. She presents no facts to support her vague allegation that younger women who "put themselves in sexually compromised situations" received job advancement.  She alleges no facts about the past "behavior" of the TSO supervisor or how it related to her.  She alleges no inference of discrimination on the basis of gender or age by the TSA attorney in Arizona.  She pleads no factual basis that the decision not to prosecute the person who allegedly "assaulted" her on March 1, 2008 was based on discriminatory intent related to her gender or age.  She fails to make any factual allegations regarding how she was treated less favorably than the alleged younger workers, who the younger workers were, or their ages.  Ms. Mattson merely alleges that she is a member of gender- and age-protected categories; that her employment status changed on July 6, 2010; that she subsequently terminated; and that she believes discrimination has occurred.

"[I]n examining a complaint under Rule 12(b)(6), we will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).  Ms. Mattson's allegations rest on "nothing other than sheer speculation to link" them "to a

---

to harassment, intimidation, and continued threats of job loss due to injury"); at 12 of 68 ("My absenteeism had increased and I needed to know what was affecting my health;" "I was preparing for shoulder surgery at this time and could not function with only one arm.").

discriminatory . . . motive." *See id.* at 1194. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. *See also Khalik v. United Air Lines*, No. 10-cv-01490-DME-MJW, 2010 WL 5068139, *3 (D. Colo. Dec. 7, 2010) (citing *Iqbal* in dismissing former employee's discrimination claim based on allegations that she was "targeted" for discriminatory treatment, including a physical assault, where she did "not state when these alleged wrongful actions occurred, what the circumstances were, or the identity of the perpetrator(s), which might be important in determining whether United could even be held responsible for these wrongdoings"), *aff'd,* 671 F.3d at 1193 ("We agree with the district court that Plaintiff's allegations are the type of conclusory and formulaic recitations disregarded by the Court in *Iqbal*."); *Sprague v. Kasa Indus. Controls, Inc.*, 250 F.R.D. 630, 633–34 (D. Kan. 2008) (dismissing an ADEA discrimination claim under Rule 12(b)(6) when the only supporting allegations were that the plaintiff was fifty-six years old at the time of her termination, the defendant terminated her because of her age, certain representatives of defendant were aware of her age, and she suffered damages). The allegations in the AC fail to provide factual support for Ms. Mattson's claims for gender and age discrimination and do not rise above the level of conclusion or mere speculation. Ms. Mattson fails to state any plausible claim for discrimination based on gender or age.

3.     Retaliation

Defendants further argue that Ms. Mattson has not stated any plausible claim for retaliation. Title VII makes it unlawful for an employer to retaliate against an employee "because [s]he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e–3(a). "A plaintiff can similarly establish retaliation either by

17

directly showing that retaliation played a motivating part in the employment decision, or

indirectly by relying on the three-part *McDonnell Douglas* framework." *Khalik*, 671 F.3d at

1192 (citation omitted).  To state a prima facie claim for retaliation under Title VII, Ms.

Mattson

> must allege sufficient facts to show that: (i) she engaged in an activity protected
> by those statutes; (ii) she suffered an adverse employment action; and (iii) there
> is some indication of a causal connection between the protected activity and the
> adverse action.  Protected activity includes situations in which an employee
> reports or complains about actions by co-workers or supervisors where those
> actions would constitute a practice made unlawful by Title VII – namely,
> discrimination on the basis of sex, race, national origin, etc.  However, it is
> essential that the employee's activity clearly and expressly involve complaints of
> prohibited discrimination, not simply complaints about unfair working conditions,
> disparate application of work rules, or other acts which, although unwelcome,
> do not implicate the particular evils of invidious discrimination that the civil rights
> statutes were enacted to curtail.

*Tafoya v. Dean Foods Co.*, No. 08-cv-02162-MSK-KMT, 2009 WL 2762738, at * 2 (D. Colo.

Aug. 26, 2009) (internal quotation marks and citations omitted).

The AC contains insufficient factual allegations to support a claim for retaliation for

engaging in protected opposition to discrimination.  First, Ms. Mattson alleges no facts that

establish a causal connection between protected activity and any changes in the terms and

conditions in her employment on either July 6, 2010, or February 18, 2011.  *See Burlington*

*Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 67-68 (2006) (retaliation requires a

causal connection between the protected activity and the materially adverse action);  *accord,*

*Somoza v. University of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008). Other than her

general conclusory assertion that she has "[a] lengthy history of adverse treatment followed

claims filed with the EEO in the 2007-2009 timeframe" (*see* Doc. # 36 at 5 of 68), Ms.

Mattson alleges no causal connection between her EEO activity and the events of either July

6, 2010 or February 18, 2011.  She alleges no facts identifying the decisionmakers, whether

they knew about her EEO activity, or how their decisions were triggered by her EEO activity. *See Khalik*, 671 F.3d at 1194 (dismissing retaliation claims where "[t]here is no nexus between the person(s) to whom [the plaintiff] complained and the person who fired her").  Ms. Mattson's conclusory allegations of the mere existence of prior EEO activity, coupled with subsequent adverse employment actions, do not state a claim upon which relief can be granted.  *See id.* at 1193 ("Plaintiff's general assertions of discrimination and retaliation, without any details whatsoever of events leading up to her termination, are insufficient to survive a motion to dismiss.").

Ms. Mattson fails to allege any facts that would plausibly establish the requisite temporal proximity between her EEO activity and the employment decisions on either July 6, 2010 or February 18, 2011.  *See McGowan v. City of Eufala*, 472 F.3d 736, 744 (10th Cir. 2006) ("The required link between the protected activity and subsequent adverse employment action can be inferred if the action occurs within a short period of time after the protected activity.");  *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (a period of six weeks gives rise to a rebuttable inference of a causal connection, but a period of three months does not).  Ms. Mattson states that her EEO activity that preceded July 6, 2010 occurred no later than sometime in 2009.  (*See* Doc. # 36 at 5 of 68 ("A lengthy history of adverse treatment followed claims filed with the EEO in the 2007-2009 timeframe."); at 12 of 68 (describing next EEO contact after the "2007-2009 timeframe" as occurring in August 2010).  There is no temporal proximity alleged between the change in Plaintiff's employment status on July 6, 2010 or her final termination on February 18, 2011 and any of Plaintiff's prior EEO activity, which occurred many months earlier.  In sum, Ms. Mattson's allegations of retaliation are too sparse and conclusory to state a claim upon which relief can be granted.

4.      Hostile Work Environment

Defendant next argues that Ms. Mattson has not alleged a cognizable hostile work environment claim.  The court agrees.

First, while Ms. Mattson repeatedly refers to "working in a hostile environment" (*see* Doc. # 36 at 6 of 68), she did not plead a hostile work environment claim in the AC.  (*See* Doc. # 7).  Allegations that do not appear in Ms. Mattson's AC cannot be raised for the first time in a response to a motion to dismiss.  *See Blackmon v. U.S.D. 259 School Dist.*, 769 F. Supp. 2d 1267, 1267 (D. Kan. 2011) ("To the extent Plaintiff tried to assert additional or different claims in her response to Defendant's motion to dismiss, those claims are not allowed."); *In re Qwest Communications Int'l, Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004) (holding that "plaintiffs may not effectively amend their Complaint by alleging new facts in their response to a motion to dismiss");  *Mattson v. Chertoff*, No. 07-cv-02432-PAB-BNB, 2009 WL 564289, *4 n.3 (D. Colo. Mar. 5, 2009) ("The plaintiff attempts to assert an additional claim for a 'matter' 'that occurred on March 1, 2008.' I will not address claims raised for the first time in a brief opposing a dispositive motion.") (internal citation omitted).

Second, to the extent that Ms. Mattson refers to a hostile work environment, she bases it on her alleged disability. (*See* Doc. # 36 at 7 of 68 (after the alleged assault in March 2008, Plaintiff "had to endure verbal attacks on my integrity, while being subject to physical touching by co-workers approaching me (reported), questioning the authenticity of shoulder damage;" alleged harassment over "damaged shoulder" in the summer of 2009); 8 of 68 (supervisor "reamed" Plaintiff "for having a shoulder injury" in December 2009); 9 of 68 ("I was continually harassed by co-workers and the working environment remained hostile until the day I was removed from duty."); 10 of 68 ("I am tired of being targeted for disability discrimination;" "I have been targeted and run ragged over my work injuries, now I'm being fired."); 11 of 68 ("I

20

have been discriminated for being disabled while performing job-related duties;" Plaintiff "subjected to harassment, intimidation, and continued threats of job loss due to injury"). However, the court has determined, *supra*., that it lacks subject matter jurisdiction over any claim of discrimination, whether for disparate treatment, retaliation or hostile work environment, based on Ms. Mattson's alleged disability.

Third, any gender- or age-based hostile environment claims are barred for failure to timely contact the EEOC.  Ms. Mattson has not performed any work for TSA since July 6, 2010 and her employment was formally terminated on February 18, 2011.  There is no allegation that Ms. Mattson initiated contact with an EEO counselor within 45 days after July 6, 2010 to initiate a complaint of a hostile work environment.  (*See* Doc. # 25-5 (where Ms. Mattson claimed that TSA discriminated against her based on her disability (neck injury) and reprisal (prior EEO activity), DHS concluded that she failed to make contact with an EEO Counselor within 45 days of July 6, 2010).  The December 30, 2010 Final Agency Decision makes no reference to any allegation related to a hostile work environment.  (*See* Doc. # 7 ay 9 of 9 ("You alleged that the Transportation Security Administration discriminated against you based on disability (neck injury) and reprisal (prior EEO activity) when you were terminated from your position as a Transportation Security Officer on July 6, 2010.").  *See also Mattson v. Napolitano*, Appeal No. 0120111925, Agency No. HS-TSA-18160-2010, 2012 WL 750343 (E.E.O.C. Feb. 22, 2012) (affirming dismissal of Ms. Mattson's August 23, 2010 complaint for failure to comply with the 45-day time requirement for EEO Counselor contact).  Any hostile environment claim is barred for failure to comply with the forty-five day administrative requirement.

Even if the court were to consider a hostile environment claim based on gender or age, such a claim must be dismissed for failure to state a claim upon which relief can be

granted.  Title VII creates a cause of action based on a hostile working environment when the workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment. . . ." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (citation and internal quotations omitted).  *See also Sandoval v. City of Boulder*, 388 F.3d 1312, 1327 (10th Cir. 2004) (to assert a hostile work environment claim, a plaintiff "must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.") (citations omitted).  A plaintiff must also demonstrate that she was subjected to the hostility because of her membership in a protected class.  *See Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (Plaintiff can only succeed on his hostile work environment claim if he can prove that his "mistreatment at work . . . through subjection to a hostile environment . . . occur[ed] because of a . . . protected characteristic.").  The court assumes, without specifically deciding, that the ADEA makes available a hostile work environment claim for age-based discrimination, analyzed under the same standards as a Title VII hostile work environment claim.  *See Brennan v. Metropolitan Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999) ("analysis of the hostile working environment theory of discrimination is the same under the ADEA as it is under Title VII.").

The AC contains no factual allegations supporting a hostile work environment based on gender or age.  In her Response, Ms. Mattson refers to a hostile work environment and mentions incidents of hostile behavior.  (*See* Doc. # 36 at 2 of 68 ("The Office of Equal Employment Opportunity has received direct evidence supporting allegations of adverse treatment, adverse impact, and contractual breach for actions experienced as an employee with TSA.  These work conditions illustrate all components of a hostile work environment.");

at 3 of 68 ("Work conditions have led to adverse treatment of employees by impacting us with a hostile work environment."); at 6 of 68 ("the foundation" for one of her EEOC complaints "was brought forth due to working in a hostile environment"); at 11 of 68 (asserting that she worked "in a constant hostile environment ever-so-pervasive . . . I have been talked down to, harassed and intimidated by management officials on every checkpoint and from co-workers and supervisors on every shift," and alleging "continued threats of job loss due to injury"); at 15 of 68 ("I have experienced harassment for many years working for this agency.")).  Ms. Mattson has merely compiled a collection of conclusory allegations and has not alleged facts that show severe and pervasive conduct that created a hostile or abusive work environment. The conduct is not alleged to relate to her gender or age.  Ms. Mattson describes conduct that she believed to be hostile, occurring over several years, without the identity of the harassers, the specific nature of their statements or conduct, the frequency with which the conduct occurred, or whether management knew of harassing behavior and failed to take corrective action.  She does not allege conduct objectively severe or pervasive enough to state a claim based on a hostile work environment.

5.     EEOC's Processing of Ms. Mattson's Complaints

To the extent that Ms. Mattson raises claims of dissatisfaction with the EEOC's processing of her complaints, such claims are properly dismissed for failure to state a claim upon which relief can be granted.  (*See* AC (Doc. # 7) at 2 of 9 ("In 2009, the EEO did not process the complaint of reporting that I was being bullied by a TSA supervisor . . . . EEO did not proceed with an investigation on a reported complaint to the allegations in 2010 . . . the EEO failed to process the reported allegation of 'wrongful termination' due to my injury [sic] state as I awaited surgery . . . Why has the EEOC been so ineffective? Direct evidence was

23

provided but, ignored.").  "[N]o cause of action against the EEOC exists for challenges to its

processing of a claim."  *Scheerer v. Rose State College*, 950 F.2d 661, 663 (10th Cir. 1991)

(collecting cases).  *See also Smith v. Casellas*, 119 F.3d 33 (D.C. Cir. 1997) (collecting cases

and holding "Congress has not authorized, either expressly or impliedly, a cause of action

against the EEOC for the EEOC's alleged negligence or other malfeasance in processing an

employment discrimination charge.").


D.      Conclusion

        The court lacks subject matter jurisdiction over any claim in the AC alleging

discrimination based on a disability.  The remainder of Ms. Mattson's AC fails to state any

claim for which relief may be granted. Accordingly, IT IS RECOMMENDED that "Defendants'

Motion to Dismiss Plaintiff's Amended Complaint [Doc. 7]" (filed January 17, 2012) (Doc. #

25) be granted and that this civil action be dismissed.


**Advisement to the Parties**

        Within fourteen days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of

Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th

Cir. 1995).  A general objection that does not put the District Court on notice of the basis for

the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the

magistrate judge's report and recommendation must be both timely and specific to preserve

an issue for de novo review by the district court or for appellate review."  *United States v. One*

*Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057,

1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 16th day of August, 2012.

BY THE COURT:


    s/Craig B. Shaffer
United States Magistrate Judge